**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CRIMINAL NO. _____ |
| **Plaintiff** | VIOLATIONS: |
| | 21 U.S.C. § 841(a)(1), (b)(1)(D); |
| **v.** | 21 U.S.C. § 331(k); |
| | 21 U.S.C. § 333(a)(2). |
| **JOHN F. REILLY** | |
| **Defendant** | |
| | **INDICTMENT** |

**THE GRAND JURY CHARGES:**

## **INTRODUCTION**

At times material and relevant to this Indictment:

### **THE CONTROLLED SUBSTANCES ACT**

1.  The Controlled Substances Act ("CSA"), 21 U.S.C. § 801, et seq.,  governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2.  Various prescription drugs were scheduled substances under the CSA.  There were five schedules of controlled substances – schedules I, II, III, IV, and V.  Drugs were scheduled into these levels based in part on their potentiality for abuse.  Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence.  21 U.S.C. § 812(b)(2) and (3).

3.  Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a

> corresponding responsibility rests with the pharmacist who fills the prescription.  An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4.   The narcotic Hydrocodone, when mixed with one or more non-narcotic active ingredients, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(e)(1)(iv).

5.   The narcotic Codeine, when mixed with one or more non-narcotic active ingredients, was classified under federal narcotics laws as a Schedule III controlled substance.  21 C.F.R. § 1308.13(e)(1)(ii).

## THE FEDERAL FOOD, DRUG, AND COSMETIC ACT

6.   The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information.  FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

7.   FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, et seq.

2

8.      Under the FDCA, the term "drug" included articles which were (1) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (2) intended to affect the structure or any function of the body of man.  21 U.S.C. § 321(g)(1)(B) and (C).

9.   Under the FDCA, a "prescription drug" was a drug intended for use by people that, because of its toxicity or potential for harmful effect, the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or a drug which FDA required to be administered under the professional supervision of a practitioner licensed by law to administer such drug as a condition of FDA approving the drug to be placed on the market.  21 U.S.C. § 353(b)(1)(A) and (B).

10.   Vicodin (Hydrocodone/APAP), described as a Schedule III controlled substance in paragraph 4 above, was indicated for the treatment of moderate to severe pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

11.   Acetaminophen/Codeine (e.g., Tylenol with Codeine #4, Codrix, Vopac), described as a Schedule III controlled substance in paragraph 5 above, was indicated for the treatment of mild to moderate pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

12.   The prescription drugs Vicodin (Hydrocodone/APAP) and Acetaminophen/Codeine and components of these prescription drugs were transported in interstate commerce to the State of New Hampshire.

13.     Under Title 21, United States Code, Section 331(k), it was illegal to do or to cause to be done any act with respect to a drug if the act was done while the drug was held for sale after shipment in interstate commerce and the act resulted in the drug being misbranded.

14.   A prescription drug was misbranded when it was not dispensed pursuant to a prescription of a practitioner licensed by law to administer such drug.  21 U.S.C. § 353(b)(1).

### DEFENDANT

15.   Defendant **JOHN F. REILLY** was a pharmacist licensed in the State of New Hampshire.  From in or around January 2001 until on or about June 26, 2006, **REILLY** was employed as the Pharmacist-in-Charge at the Wal-Mart Pharmacy located in Newington, New Hampshire.

### COUNTS ONE THROUGH FOUR
### 21 U.S.C. §§ 841(a)(1), (b)(1)(D)
### (Unlawful Dispensing of Controlled Substances)

16.   The factual allegations in paragraphs 1-15 of the Indictment are incorporated by reference and realleged as though fully set forth herein.

17.   On at least four separate occasions known to the Grand Jury, customer J.L presented to **REILLY** at the Newington, New Hampshire Wal-Mart Pharmacy a previously filled prescription for Schedule III controlled substances that had no refills available.

18.   On each of the four occasions, in response to the previously filled prescription with no available refills, **REILLY** generated a fax refill request form, which should have been faxed to the prescribing physician for authorization prior to distributing and dispensing the controlled substances.

4

19.    **REILLY** did not send the four fax refill request forms to the purported prescribing physicians, or otherwise contact the physicians, for authorization.

20.  Although **REILLY** never obtained physician authorization or approval to dispense the controlled substances pursuant to the four fax refill request forms, he distributed and dispensed the controlled substances to J.L.

21.  The four fax refill request forms were not effective prescriptions because they were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice, namely, no physician ever authorized the distribution or dispensing of controlled substances pursuant to the fax refill request forms.

22.  On or about the dates listed below, in the District of New Hampshire and elsewhere,

### JOHN F. REILLY

the defendant herein, did knowingly and intentionally distribute and dispense controlled substances other than for a legitimate medical purpose and not in the usual course of medical practice, each such instance being a separate Count of this Indictment:

| COUNT | DATE | CONTROLLED SUBSTANCE DISPENSED |
|-------|------|-------------------------------|
| **ONE** | 2/28/05 | 70 Vicodin 7.5/750 mg tablets distributed and dispensed to J.L. in Newington, NH |
| **TWO** | 1/10/06 | 90 Hydrocodone/Acetaminophen 10/325 mg tablets distributed and dispensed to J.L. in Newington, NH |
| **THREE** | 4/26/06 | 100 Acetaminophen/Codeine 300/60 mg tablets distributed and dispensed to J.L. in Newington, NH |
| **FOUR** | 5/16/06 | 30 Vicodin 7.5/750 mg tablets distributed and dispensed to J.L. in Newington, NH |

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(D).

5

## COUNTS FIVE THROUGH EIGHT
### 21 U.S.C. 331(k), 333(a)(2), and 353(b)(1)
### (Causing the Misbranding of a Drug While Held for Sale)

23.  The factual allegations in paragraphs 1-21 of the Indictment are incorporated by reference and realleged as though fully set forth herein.

24.  On or about the dates listed below, in the District of New Hampshire and elsewhere,

### JOHN F. REILLY

the defendant herein, with the intent to defraud and mislead, did dispense and cause to be dispensed the prescription drugs Vicodin (Hydrocodone/Acetaminophen) and Acetaminophen/ Codeine without the prescription of a practitioner licensed by law to administer the drug, while the drugs were held for sale and after the drugs had been shipped in interstate commerce, which acts resulted in the drugs being misbranded within the meaning of Title 21, United States Code, Section 353(b)(1), each such instance being a separate Count of this Indictment:

| COUNT | DATE | PRESCRIPTION DRUGS DISPENSED |
|-------|------|------------------------------|
| **FIVE** | 2/28/05 | 70 Vicodin 7.5/750 mg tablets distributed and dispensed to J.L. in Newington, NH |
| **SIX** | 1/10/06 | 90 Hydrocodone/Acetaminophen 10/325 mg tablets distributed and dispensed to J.L. in Newington, NH |
| **SEVEN** | 4/26/06 | 100 Acetaminophen/Codeine 300/60 mg tablets distributed and dispensed to J.L. in Newington, NH |
| **EIGHT** | 5/16/06 | 30 Vicodin 7.5/750 mg tablets distributed and dispensed to J.L. in Newington, NH |

All in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

6

## NOTICE OF CRIMINAL FORFEITURE
[21 U.S.C. § 853]

As a result of the Title 21 offenses alleged in Counts One through Eight of this indictment, the defendant, **JOHN F. REILLY**, shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting or derived from proceeds the defendant obtained directly or indirectly as a result of the said violation, and any and all property used, or intended to be used, in any manner or part to commit and to facilitate the commission of the violation.

**TRUE BILL**

/s/ Foreperson of the Grand Jury
Foreperson of the Grand Jury

JOHN P. KACAVAS
UNITED STATES ATTORNEY

/s/ Mark A. Irish
Mark Irish
Assistant United States Attorney

/s/ Shannon M. Singleton
Shannon M. Singleton
Special Assistant United States Attorney

Dated: September 30, 2009

7